FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 16, 2023

SEAN F. McAVOY, CLERK

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Tyler Tornabene
Dan Fruchter
Jeremy J. Kelley
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD ZANE ROSALES,

Defendant.

Case No: 2:23-cr-00118-TOR

Pretrial Diversion Agreement

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Dan Fruchter, Tyler Tornabene, and Jeremy Kelley Assistant United States Attorneys, as well as Defendant, Richard Z. Rosales, and Defendant's counsel, Joseph W. Kuhlman, agree to the following Pretrial Diversion Agreement (the "Agreement"):

## I. Overview and Information

1. On July 10, 2023, the United States Attorney's Office for the Eastern District of Washington notified Defendant Richard Z. Rosales that the United States Air Force Office of Special Investigations (AF-OSI) was investigating Defendant for wire fraud, in violation of 18 U.S.C. § 1343.

PRETRIAL DIVERSION AGREEMENT - 1

2. Defendant Richard Z. Rosales waives indictment and consents to the filing of a one-count Information (the Information) in the United States District Court for the Eastern District of Washington, charging Defendant with one count of Wire Fraud, in connection with the Covered Conduct, as set forth below.

3. Defendant stipulates and agrees that Defendant did in fact violate 18 U.S.C. § 1343 and that the United States could prove Defendant's guilt beyond a reasonable doubt. Defendant wishes to accept responsibility for this conduct. Accordingly, Defendant stipulates and agrees to the following facts, referred to herein as the "Covered Conduct":

    a. The Economic Injury Disaster Loan ("EIDL") program was a federal government relief program that provides low-interest funding to small business, renters, and homeowners affected by declared disasters. To receive an EIDL and/or an EIDL Advance for COVID-relief, a qualifying business must submit an application to the Small Business Administration ("SBA") with information about the applicant's operations including the number of employees and gross revenues and costs of goods in 12-months preceding January 31, 2020.

    b. The Paycheck Protection Program ("PPP") was a federal government COVID relief program that provided low-interest, forgivable loans to qualifying small businesses to help businesses weather the devastating economic effects of the COVID pandemic. Only businesses, not individuals, were eligible to receive PPP Loans. However, a self-employed individual (*i.e.*, a sole proprietor) could be eligible to receive a PPP loan of up to $20,833 if that sole proprietorship had made an annual profit of $100,000 or more in 2019 or 2020.

    c. On or about June 2020, Defendant was employed as an Airman with the United States Air Force. Defendant was not self-employed (*i.e.*, was not a sole proprietor) and had not been self-employed in 2019 or 2020.

    d. In June 2020, Defendant's former roommate and fellow Airman Taylor J. Kendall ("Kendall") approached Defendant and offered him an

PRETRIAL DIVERSION AGREEMENT - 2

"opportunity." Kendall requested Defendant's personal and banking information. On June 29, 2020, Defendant provided Kendall with his United Services Automobile Association ("USAA") bank account information. Defendant also sent his Navy Federal Credit Union banking account information to Kendall after Kendall reported an error with Defendant's USAA account.

  e. On or about June 29, 2020, EIDL Application #3307358561 was created and submitted on behalf of Defendant requesting a EIDL Advance for $10,000.00. The Application falsely and fraudulently stated that the owner "Zane Rosales" was a sole proprietor in the agricultural industry of the business "Richard Rosales," which formed in April of 2017. The Application was supported by false and fictitious statements claiming "Richard Rosales" had ten employees as of June 29, 2019, its gross revenues for the 12-month period prior to January 31, 2020, were $55,500.00, and that its costs of goods sold for the 12-month period prior to January 31, 2020, were $55,100.00.

  f. A few weeks after the EIDL application was submitted, Defendant received about $10,000.00 to his Navy Federal Account from the SBA as part of the EIDL Advance program. Defendant asked Kendall about the funds and Kendall informed Defendant that it was a grant.

  g. In or about April 2021, and after receiving the $10,000 EIDL Advance from EIDL Application #3307358561, Defendant was approached by Jadarrius Cross ("Cross"), an Airman with whom Defendant was acquainted. Cross offered Defendant an "opportunity," in exchange for which he asked for Defendant's name, phone number, social security number, and bank information. Defendant agreed and knowingly provided Cross with the information.

  h. Shortly after Defendant's exchange with Cross, Defendant received a "welcome" text message from Kendall. Defendant understood that Cross and Kendall were working together to facilitate the "opportunity." Defendant provided

PRETRIAL DIVERSION AGREEMENT - 3

Kendall a copy of his driver's license and financial information to Kendall upon request.

   i. On or about April 4, 2021, PPP Loan Application #28180254 was submitted by Kendall on behalf of Defendant requesting a PPP Loan in the amount of $20,832.00. The Application falsely and fraudulently stated that Defendant was the sole proprietor of the company "Richard Rosales," which was formed in 2019. The Application was supported by a false and fraudulent document that purported to be a copy of the Schedule C from Defendant's 2019 tax return. The false and fraudulent Schedule C indicated that Defendant earned a gross profit of $104,500.00 in 2019 as a sole proprietor in the Finance Management industry. The Schedule C and Loan Application contained Defendant's true and correct Social Security Number.

   j. At some point on or about April 4, 2021, Kendall provided Defendant a link to complete a form related to the "opportunity." Defendant electronically filled out and electronically signed the forms.

   k. Pursuant to the false and fraudulent PPP Loan Application described above, PPP Loan #6725268700 was approved by the SBA on or about April 4, 2021, and was disbursed on or about April 4, 2021 to Defendant's bank account at Navy Federal Credit Union.

   l. Before receiving any funds from the PPP Loan, Defendant asked Kendall if the "opportunity" was in fact a PPP Loan. Kendall confirmed that it was. Kendall did not provide instructions on how to spend the loan. At the time, Defendant knew that he did not own or operate a business, and thus, that he would not be eligible for any grant for businesses or for a PPP Loan. To the best of Defendant's knowledge, Cross and Kendall also knew that Defendant was employed by the United States Air Force as an Airman and that Defendant was not self-employed and did not operate a sole proprietorship or any other business. At the time, Defendant did not qualify for a PPP Loan because he did not own, run, or manage any business, sole proprietorship or otherwise.

PRETRIAL DIVERSION AGREEMENT - 4

   m. After Defendant received the loan funds, Kendall requested that Defendant pay Kendall a portion of the loan proceeds in exchange for Kendall's submission of the loan. Defendant accordingly paid Kendall $10,000 through Zelle and Cash App, which are Internet-based peer-to-peer money transfer applications, in the weeks following Defendant's receipt of the loan proceeds in exchange for Kendall's submission of the Loan Application. Defendant used the remaining $10,000 to upgrade his vehicle and pay for wedding vendors.

  4. On authority from the Attorney General of the United States, through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, prosecution in the Eastern District of Washington for the Covered Conduct shall be deferred for 48 months. This 48-month period begins on the date this Agreement is signed by both parties and accepted by the Court. If Defendant fulfills his entire restitution obligation as described in Paragraph 8, *infra*, prior to the end of the 48-month period, the Agreement may be accelerated to terminate as early as 24 months from the date the Agreement is signed by both parties and accepted by the Court.

  5. The United States and Defendant stipulate and agree that the Court will maintain jurisdiction over this matter and that the Court shall be the final arbiter as to: (1) whether a party breached this Agreement, and if so; (2) the appropriate remedy, which may include either terminating the Agreement or modifying its terms. A modification may include extending the Agreement's 48-month period by an additional 12 months, for a total of 60 months, or accelerating the Agreement to terminate in as early as 24 months if Defendant fulfills his restitution obligation, as described in Paragraphs 4 and 8.

## II. Terms

Defendant stipulates and agrees to the following terms:

  6. **Waiver of Constitutional Rights.** Defendant, by entering this Agreement, agrees to waive certain constitutional rights including (1) the right to a jury trial; (2) the right to see, hear, and question witnesses; (3) the right to compel

PRETRIAL DIVERSION AGREEMENT - 5

witnesses to testify; (4) the right to remain silent at trial; and (5) the right to testify at trial. Defendant knowingly and voluntarily waives the above rights.

7. **Supervision.** Defendant stipulates and agrees to be supervised by the U.S. Probation Office during this 48-month period (or longer, if the period is extended by the Court). Further, Defendant understands the following:

    a. Defendant shall not violate any federal, state, or local law. This term does not apply to minor civil infractions such as speeding.

    b. If Defendant is arrested or has any official contact with law enforcement in a civil or criminal investigative capacity, Defendant shall notify Defendant's supervising pretrial diversion officer within two business days.

    c. Defendant shall live within the jurisdiction of the Eastern District of Washington. If Defendant seeks to reside outside the District, Defendant shall notify and seek the approval of Defendant's supervising pretrial diversion officer so that appropriate arrangements in light of the Agreement can be made.

    d. Defendant shall maintain employment in a lawful occupation. When out of work, Defendant shall notify Defendant's supervising pretrial diversion officer. In the event that Defendant becomes self-employed, Defendant shall provide evidence of such self-employment.

    e. Defendant shall report to Defendant's supervising pretrial diversion officer as directed by the Court or U.S. Probation. Any failure to abide by the reporting requirements as established by the Court or U.S. Probation shall be deemed a violation of the Agreement.

    f. Defendant shall not possess, control, consume, and/or use any illegal controlled substance, including marijuana, nor own, possess, or have access to any firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the

PRETRIAL DIVERSION AGREEMENT - 6

        specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers), unless it has been disclosed to, and approved by, U.S. Probation.

    g. Defendant will allow the probation officer to visit at any time at Defendant's home or elsewhere and will permit the probation officer to take any items prohibited by the conditions of supervision that he or she observes in plain view.

    h. Defendant shall abide by any other conditions imposed by Defendant's supervising pretrial diversion officer.

8. **Restitution.** As an express condition of this Agreement and the promises made by the United States herein, Defendant agrees to make full restitution to the United States Small Business Administration (SBA) and the loan servicer, as follows:

    a. Defendant agrees to repay the loan servicer, Capital Plus Financial, LLC, or the SBA as may be directed, the remaining amount owed on PPP Loan #6725268700, which presently amounts to $20,832.00 in principal, $25.65 in interest, and $214.94 in unpaid late charges incurred since August 30, 2022, for a total restitution amount of $21,072.59.

    b. Defendant agrees to repay the SBA its $2,500.00 Lender Fee.

    c. Defendant agrees to repay the SBA the EIDL Advance payment obtained from EIDL Application #3307358561, which presently amounts to $10,000.

    d. Defendant agrees to abide by the repayment schedule for Loan #6725268700 and #3307358561 as determined by the SBA and/or loan servicer. Defendant agrees to make timely and complete payments according to the repayment schedule.

    e. Defendant agrees that his obligation to make full restitution of $33,572.59 continues until full restitution is made and agrees that he

PRETRIAL DIVERSION AGREEMENT - 7

is obligated to make full restitution of $33,572.59 regardless of whether he breaches this Agreement.

    f. Until Defendant's restitution obligations are paid in full, Defendant agrees to fully disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.

    g. Defendant voluntarily agrees that the United States may immediately record a lien against all property and rights to property of the Defendant, which shall be released upon full payment of the restitution balance.

    h. Defendant agrees that if he fails to make restitution payments as provided in this Paragraph, the United States shall be entitled to the entry of a money judgment against the Defendant in the amount of the outstanding balance. The parties further agree that if a money judgment is entered, the United States shall be entitled to discovery in aid of collection of the money judgment.

    i. Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If the Defendant fails to make his restitution payments as agreed in this Paragraph, he shall be enrolled in TOP and TOP may take all or part of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations.

    j. Defendant understands that if the Defendant fails to make his restitution payments as agreed in this Paragraph, the United States may pursue any available remedies to ensure the restitution obligation is satisfied, including, but not limited to, garnishment and/or execution against available funds, wages, or assets.

PRETRIAL DIVERSION AGREEMENT - 8

9. **Tolling.** Defendant stipulates and agrees to toll the running of all applicable statutes of limitations and any time-based defenses for the Covered Conduct. This tolling shall run from the date the Agreement is signed by all parties until the Agreement expires or is terminated by the Court. Defendant stipulates and agrees that the Agreement's tolling provision does not abridge or curtail the applicable statute of limitations in any way, but rather extends the applicable statute of limitations by the period of time that the Agreement is in effect.

Defendant further expressly waives indictment and all rights to a speedy indictment and/or trial pursuant to the Sixth Amendment of the United States Constitution, 18 US.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

10. **Breach.** If the Court, after a hearing, terminates the Agreement based on a breach by Defendant, the United States may resume its prosecution against Defendant as to the charge(s) under investigation, and any additional charges.

11. **Admissibility of the Agreement in Prosecution.** In the event that the Court terminates the Agreement based on a breach by Defendant, Defendant stipulates and agrees that the Agreement and Defendant's admissions contained therein shall be admissible against Defendant at any trial, sentencing, or other related proceeding.

The United States stipulates and agrees to the following:

12. **Deferred Prosecution and Dismissal.** The United States stipulates and agrees to defer prosecution of the above-captioned matter for a period of 48 months (or up to 60 months if the Agreement is extended). When and if Defendant satisfies all the requirements of the Agreement (including any modifications or extensions), the United States stipulates that it will seek dismissal with prejudice of the Information filed against Defendant pursuant to this Agreement. Except in the event of a violation by Defendant of any term of this Agreement, the United States will bring no additional charges against Defendant relating to Defendant's conduct as described in

PRETRIAL DIVERSION AGREEMENT - 9

the Information and the Covered Conduct set forth above. This agreement does not provide any protection against prosecution for any crimes except as set forth above. Defendant and the United States understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to defer prosecution for any reason: (1) both the United States and Defendant are released from any obligation imposed upon them by this Agreement; and (2) this Agreement shall be null and void, except for the tolling provisions set forth herein.

### III. Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____     11/16/23
Tyler Tornabene                Date
Assistant U.S. Attorney

_____     11/16/23
Dan Fruchter                   Date
Assistant U.S. Attorney

_____     11/16/23
Jeremy J. Kelley               Date
Assistant U.S. Attorney

PRETRIAL DIVERSION AGREEMENT - 10

I have read the Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. I understand the terms and conditions of the Agreement and agree to comply with them.

_____    11/16/23
Richard Z. Rosales                 Date
Defendant

_____    11/16/23
Joseph W. Kuhlman                  Date
Attorney for Defendant

Approved without passing judgment on the merits or wisdom of this diversion.

_____    11/16/23
                                   Date
United States District Judge

PRETRIAL DIVERSION AGREEMENT - 11